United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INNOGRIT, CORP., <br><br> Defendant. | Case No. 19-CV-02082-LHK <br><br> **ORDER GRANTING PRELIMINARY INJUNCTION** |

On April 23, 2019, the Court denied Plaintiff's ex parte application for a temporary restraining order. ECF No. 16 at 6. However, the Court also ordered Defendant to show cause why a preliminary injunction should not issue. *Id.* The Court permitted the parties to brief whether a preliminary injunction is appropriate here. Before the Court is the question of whether to impose a preliminary injunction in the instant case. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS a preliminary injunction.

**I.　BACKGROUND**

**A. Factual Background**

Plaintiff is a provider of electronic design automation ("EDA"). ECF No. 39 (first amended complaint, or "FAC") at ¶ 8. EDA refers to "using computers to design, verify, and

1

simulate the performance of electronic circuits." *Id.* Plaintiff has invested substantial sums of money in designing EDA software, and offers a variety of software applications to purchasers. *Id.* at ¶¶ 10, 11.

In order to access Plaintiff's software, customers purchase licenses, which grant "customers limited rights to install [Plaintiff's] EDA software and to access and use specific . . . software programs subject to control by [Plaintiff] via its license key system." *Id.* at ¶ 11. The license key system is a "security system that controls access to its licensed software by requiring a user to access an encrypted control code provided by [Plaintiff] in order to execute the licensed software." *Id.* The "encrypted control code is contained in a license key file that specifies the location(s) where the licensed software is authorized to be used and controls certain aspects of the licensed software, including among other items the quality and term of the licensed software in accordance with the purchased license terms." *Id.*

In early 2017, Synopsys International Ltd. ("Synopsys Ltd."), a wholly-owned subsidiary of Plaintiff Synopsys, Inc., began negotiations to license the EDA software to Defendant. *Id.* at ¶ 18. On January 20, 2017, an end user license and maintenance agreement ("EULA") was executed between Synopsys Ltd.—Plaintiff's wholly-owned subsidiary charged with distribution and oversight of Synopsys software in China—and Defendant for Defendant's use of Plaintiff's software at the address Defendant provided. *Id.* at ¶ 19. The address Defendant provided is located in Shanghai, China. *Id.*

However, around May 2017, months after the EULA specifying use exclusively in Shanghai was signed, Plaintiff accused Defendant of pirating Plaintiff's software for use in Defendant's San Jose, California office. *Id.* at ¶ 27. Plaintiff alleges that Defendant's circumvention of the license key system "has enabled [Defendant] to use [Plaintiff's] software without authorization many thousands of times." *Id.*

Plaintiff's first cause of action is for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1). *Id.* at ¶¶ 48-57. Plaintiff's second cause of action is for violations of another section of the DMCA, 17 U.S.C. § 1201(a)(2). *Id.* at ¶¶ 58-65.

2

Case No. 19-CV-02082-LHK
ORDER GRANTING PRELIMINARY INJUNCTION

### B. Procedural History

On April 17, 2019, Plaintiff filed a complaint against Defendant. ECF No. 1. On April 18, 2019, Plaintiff filed an ex parte motion for: (1) a temporary restraining order; (2) an order to show cause why a preliminary injunction should not issue; (3) expedited discovery; and (4) entry of protective order. ECF No. 12. On April 23, 2019, the Court: (1) denied entry of a temporary restraining order; (2) ordered Defendant to show cause why a preliminary injunction should not issue; (3) granted expedited discovery; and (4) denied without prejudice the request to enter a protective order. ECF No. 16. Specifically, the Court denied entry of a temporary restraining order because the Court determined that Plaintiff could not show that Plaintiff would be irreparably harmed in the absence of a temporary restraining order. *Id.* at 4-6. On May 14, 2019, Defendant filed a response to the Court's order to show cause why a preliminary injunction should not issue. ECF No. 31 ("Def.'s Br."). On May 23, 2019, Plaintiff filed a first amended complaint. ECF No. 33. On June 4, 2019, Plaintiff filed a response to the Court's order to show cause why a preliminary injunction should not issue. ECF No. 43 ("Pl.'s Br.").

## II. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must make a four-fold showing: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Amer. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Moreover, the party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted) (emphasis in original).

## III. DISCUSSION

The Court addresses in turn each of the *Winter* factors to determine whether a preliminary

3

Case No. 19-CV-02082-LHK
ORDER GRANTING PRELIMINARY INJUNCTION

1 injunction is warranted.

### A. Likelihood of Success on the Merits

The first *Winter* factor is whether Plaintiff's causes of action are likely to succeed on the merits. Plaintiff's first amended complaint states two causes of action against Defendant: (1) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1); and (2) violation of the DMCA, 17 U.S.C. § 1201(a)(2). ECF No. 39 at ¶¶ 48-65. The Court discusses the likelihood of success of Plaintiff's 17 U.S.C. § 1201(a)(1) cause of action then Plaintiff's 17 U.S.C. § 1201(a)(2) cause of action.

#### 1. 17 U.S.C. § 1201(a)(1)

17 U.S.C. § 1201(a)(1) prohibits "circumvention of technological measures that effectively control *access* to a copyrighted work." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002) (emphasis in original).

Plaintiff retained FTI Consulting Technology LLC to analyze the forensic evidence from Defendant's computers. ECF No. 43-2 at ¶ 5. FTI Consulting Technology LLC has identified at least two ways that Defendant appears to have violated 17 U.S.C. § 1201(a)(1).

First, according to Daniel Roffman, senior managing director in the digital forensic and investigation practice at FTI Consulting Technology LLC, forensic evidence collected from Defendant's computers revealed "evidence of software piracy, including forensic artifacts related to counterfeit license keys, counterfeit key generators, and 'crack' files for Synopsys software. Generally, a 'crack file' is a file containing tools to 'unlock' unauthorized copies of Synopsys EDA software." ECF No. 43-2 at ¶ 12.

Second, Roffman confirmed that Defendant manually changed the media access control ("MAC") addresses on 11 computers in the United States, which allowed Defendant to run Plaintiff's software on unauthorized computers. *Id.* at ¶ 10. Thus, Defendant circumvented technological measures that control access to Plaintiff's software because Plaintiff's software only runs when a software license key matches the MAC address of a computer authorized to run the software. *Id.*

4
Case No. 19-CV-02082-LHK
ORDER GRANTING PRELIMINARY INJUNCTION

Accordingly, Plaintiff is likely to succeed on Plaintiff's 17 U.S.C. § 1201(a)(1) cause of action. Defendant's computers contained evidence of, *inter alia*, crack files used to gain unauthorized access to Plaintiff's EDA software by circumventing Plaintiff's anti-piracy measures through "unlocking" Plaintiff's proprietary EDA software. Moreover, Defendant manually changed the MAC addresses of 11 computers in the United States, which also allowed Defendant to circumvent Plaintiff's anti-piracy measures.

### 2. 17 U.S.C. § 1201(a)(2)

17 U.S.C. § 1201(a)(2) prohibits importing and manufacturing "technology that circumvents a technological measure that 'effectively controls access' to a copyrighted work." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). The forensic evidence collected from Defendant's computers shows that Defendant imported a crack file from an Iranian software piracy website and obtained license key generator software from a Chinese website known to host pirated software. ECF No. 43-2 at ¶ 12. As aforementioned, crack files are used to "unlock" pirated copies of software. Thus, Plaintiff can prove that Defendant imported technology (i.e., the crack file) from Iran that can "unlock" (i.e., circumvent) Plaintiff's measures to control access to Plaintiff's software. Thus, Plaintiff is likely to succeed on Plaintiff's 17 U.S.C. § 1201(a)(2) cause of action.

### 3. Summary

Plaintiff has shown that Plaintiff is likely to succeed in proving that Defendant violated both 17 U.S.C. § 1201(a)(1) and 17 U.S.C. § 1201(a)(2). Thus, the first *Winter* factor weighs in favor of a preliminary injunction.

### B. Irreparable Harm in the Absence of a Preliminary Injunction

The second *Winter* factor is whether Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. The Court finds that this factor weighs in favor of a preliminary injunction.

Plaintiff estimates that software piracy "decreases [Plaintiff's] market share by . . . about $500 million in revenue *every year*." Pl.'s Br. at 12 (citing ECF No. 43-1 at ¶ 6). In other words,

Plaintiff estimates that its lost profits due to piracy amount to $500 million annually. Plaintiff also argues that competing with piracy "creates downward pricing pressure to induce customers to *pay* for a license rather than paying nothing to use pirated software off the street—or, as in this case, from a Chinese or Iranian piracy website." *Id.*

Ample case law supports Plaintiff's arguments that loss of market share and lost profits constitute irreparable harm. For instance, courts have held that lost profits are "irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (citing *People of California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1316, 1319 (9th Cir. 1985)). Moreover, the Ninth Circuit has held that evidence that "it is difficult to complete with unlicensed services" establishes irreparable harm. *Disney Enterps, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017); *see also A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) ("Having digital downloads available for free on the Napster system necessarily harms the copyright holders' attempts to charge for the same downloads.").

In sum, Plaintiff argues, with support from case law, that diminution in market share and lost profits constitute irreparable harm. Thus, the second *Winter* factor weighs in favor of a preliminary injunction.

### C. The Balance of Equities

The third *Winter* factor is whether the balance of equities favors an injunction. To determine the balance of equities, a court must "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

Here, the balance of equities favor the Plaintiff. Even after this lawsuit was filed on April 17, 2019, Plaintiff received "data indicating use of counterfeit license keys by . . . [one of Defendant's computers] that appears to be located in Canada." ECF No. 43-3 at ¶ 17. Indeed, Plaintiff has evidence that Defendant continued to use unauthorized versions of Plaintiff's software until May 26, 2019, more than a month after the instant suit commenced and put Defendant on notice that Plaintiff had discovered Defendant's alleged piracy. *Id.* Thus, Plaintiff

6

continued to suffer harm from Defendant's piracy long after the lawsuit started, which highlights the need for a preliminary injunction to stop Defendant from pirating Plaintiff's software with impunity while the lawsuit is ongoing.

Furthermore, Defendant's brief fails to identify any damage it might suffer if an injunction is granted. Indeed, the Court finds that an injunction would not harm Defendant because "an injunction would do no more than require Defendant to comply with federal and state anti-piracy laws." *Dish Network, L.L.C. v. SatFTA*, 2011 WL 856268, at *8 (N.D. Cal. Mar. 9, 2011); *see also DISH Network L.L.C. v. Rios*, 2015 WL 632242, at *7 (E.D. Cal. Feb. 13, 2015) ("[C]onsidering the balance of hardships between plaintiffs and defendant . . . defendant would suffer no cognizable hardship from merely being prevented from engaging in unlawful activity. By contrast, plaintiffs would suffer further loss in the event of future piracy by defendant.").

In sum, the balance of equities tips heavily in favor of Plaintiff. Therefore, the third *Winter* factor weighs in favor of a preliminary injunction.

### D. Public Interest

The fourth and final *Winter* factor is whether the public interest favors a preliminary injunction. The Court finds that public interest favors a preliminary injunction. Indeed, the *SatFTA* court has explicitly held that "the public has an interest in the enforcement" of the DMCA. *SatFTA*, 2011 WL 856268, at *8 (citing *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) ("[T]he public has an interest in the enforcement of federal statutes.")). Moreover, the public has an interest in "preventing copyright infringement." *Flextronics Int'l, Ltd. v. Parametric Tech., Corp.*, 2013 WL 5200175, at *8 (N.D. Cal. Sept. 16, 2013); *see also Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("Since Congress has elected to grant exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protects and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.").

In sum, the public interest favors a preliminary injunction, and thus, the fourth *Winter*

7

1 factor weighs in favor of a preliminary injunction.

## IV. CONCLUSION

All four *Winter* factors weigh in favor of a preliminary injunction. Thus, for the foregoing reasons, the Court GRANTS a preliminary injunction.

It is hereby ORDERED that Defendant InnoGrit, Corp., its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with Defendant InnoGrip, Corp., including employees and independent contractors, are enjoined from directly or indirectly accessing, using, transferring, or copying, in any way, any of Plaintiff Synopsis, Inc.'s software in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*

It is further ORDERED that Defendant InnoGrit, Corp., its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with Defendant InnoGrit, Corp., including employees and independent contractors, are further enjoined from directly or indirectly accessing, using, transferring, or copying, in any way, any materials associated with or used to enable access to unauthorized software by Plaintiff Synopsys, Inc. in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, including but not limited to counterfeit license keys, license key generators, or cracked versions of Plaintiff Synopsys, Inc.'s software.

It is further ORDERED that Defendant InnoGrit, Corp., its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with Defendant InnoGrit, Corp., including employees and independent contractors, shall preserve all evidence that may relate to this matter, including all hard copy materials and all computer hard drives and other electronic devices in their possession, custody, or control. This includes all USB devices and other mobile devices used by Defendant InnoGrit, Corp., its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with Defendant InnoGrit, Corp., including employees and independent contractors, which may have contained or currently contain Plaintiff Synopsys, Inc.'s software, license keys, counterfeit

8

Case No. 19-CV-02082-LHK
ORDER GRANTING PRELIMINARY INJUNCTION

keys, key generators or other materials related to the claims and defenses in this matter.

Nothing in this order shall be construed to prevent Defendant InnoGrit, Corp. from engaging in lawful uses of Plaintiff Synopsys, Inc.'s software pursuant to the terms of the end user license and maintenance agreement executed on January 20, 2017 between Synopsys International Ltd. and InnoGrit, Corp.

**IT IS SO ORDERED.**

Dated: June 26, 2019

_____
LUCY H. KOH
United States District Judge